537 F.2d 648
 In the Matter of the Arbitration of Certain Differences
Between AAACON AUTO TRANSPORT, INC., Appellee,
and
STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., subrogee of
Joseph Romagnoli, Appellant.
 No. 697, Docket 75--7585.
 United States Court of Appeals,
Second Circuit.
 Argued March 26, 1976.
Decided June 9, 1976.
 
 Walter Williamson, New York City (Ronald J. Berk, New York City, also on the brief), for appellant.
 Ralph Zola, New York City, for appellee.
 Before LUMBARD, OAKES and TIMBERS, Circuit Judges.
 OAKES, Circuit Judge:
 
 
 1
 This appeal contests the validity under the Interstate Commerce Act, and under general equitable principles, of the arbitration clause in an interstate carrier's standard-form bill of lading utilized in connection with its nationwide business of transporting individually owned automobiles from point to point within the United States. The principal argument is that the arbitration clause is invalid because it compels private shippers to arbitrate their claims in New York, which may be entirely remote, inconvenient and expensive to them in connection with their claims. Since the amount of damages involved is usually in the vicinity of $1,000,[1] resulting from harm to the automobile en route while being driven by one of the carrier's casual drivers,[2] the cost of appearing in New York for arbitration frequently constitutes a bar, the argument runs, to pursuing even plainly valid claims. The specific order appealed from was granted by the United States District Court for the Eastern District of New York Mark A. Costantino, Judge. Pursuant to 9 U.S.C. § 4,[3] it directs that arbitration be compelled in the manner provided in the bill of lading, i.e., in New York. It also orders the respondent State Farm Mutual Automobile Insurance Co. (State Farm), as subrogee of Joseph Romagnoli, an automobile shipper, to stay proceedings in an action at law commenced against Aaacon in the State of California until arbitration has been completed.[4] Because we consider that the compulsory venue provision in connection with the arbitration is illegal and invalid, we reverse the judgment.
 
 
 2
 Aaacon Auto Transport, Inc. (Aaacon), is the interstate common motor carrier which is appellee. Its business is transporting individual, privately-owned vehicles throughout the continental United States. It advertises and has offices in all major United States cities, including Los Angeles, California, near where Mr. Romagnoli's vehicle was to be transported, where he now resides and where he sued Aaacon.
 
 
 3
 Mr. Romagnoli made arrangements in June of 1972 to have his 1971 Ford pick-up truck transported by Aaacon from Abbeville, South Carolina, to La Mirada, California, where he was being transferred by his employer. These arrangements were made through Aaacon's office in Atlanta, Georgia. The shipper's contract or 'freight billorder form' on which Aaacon relies states that it is 'subject to and incorporating all provisions of the carrier's bill of lading which is reproduced on reverse side hereof.' On the reverse side of the freight bill there is a 28-line uniformly printed closely-packed statement wherein, inter alia, the shipper or shipper's agent consents to personal jurisdiction in New York state and federal courts and to service of process for commencement of any action by certified mail, and in which he agrees to a provision that '(a)ny claim or controversy, whether founded an contract or tort, arising out of or relating to this agreement or performance or breach thereof shall be settled by arbitration in New York City.'[5]
 
 
 4
 Mr. Romagnoli's pick-up truck never arrived in southern California but was damaged in the state of Washington where it had been driven by the Aaacon driver. Romagnoli sued Aaacon in an Orange County, California, court to recover $1,157.20 damages allegedly incurred. As subrogee of Mr. Romagnoli for the major part of his claim, State Farm had a major interest in the California action and is the principal party here. While Aaacon would like to have us accordingly view the facts of the case as one between two business equals, we have to examine them from the standpoint of the individual shipper who may or may not be covered by comprehensive insurance such as was furnished Mr. Romagnoli by State Farm.[6] As subrogee of Romagnoli, State Farm stands in his shoes, and the validity of the arbitration clause must be evaluated in the terms of its effect on the ability of the private shipper to pursue potentially valid claims under the contract. See, e.g., Travelers Indemnity Co. v. Evans Pipe Co., 432 F.2d 211, 212--13 (6th Cir. 1970); Lumbermens Mutual Casualty Co. v. Borden Co., 268 F.Supp. 303, 314 (S.D.N.Y.1967). This contractual term, it may also be noted, was one placed by Aaacon on a form agreement made with a private shipper who, according to his affidavit, was unaware of the existence of the arbitration clause and did not sign the bill of lading himself.
 
 
 5
 While State Farm raises the claim that the clause limiting venue to New York City is void as an unconscionable term in a contract of adhesion, the principal arguments we need consider relate to the Interstate Commerce Act and are as follows:
 
 
 6
 1. The restriction on venue constitutes a 'limitation of liability' and is therefore unlawful under Section 20(11) of the Interstate Commerce Act, 49 U.S.C. § 20(11).[7]
 
 
 7
 2. The arbitration clause limiting venue to New York City is also void under 49 U.S.C. § 317(a)[8] because the ICC, in a decision not appealed from by Aaacon, has refused to approve the clause in Aaacon's tariff.[9]
 
 
 8
 Section 20(11) of the Interstate Commerce Act, the so-called Carmack Amendment to the Hepburn Act of 1906, states that 'any limitation of liability or limitation of the amount of recovery . . . without respect to the manner or form in which it is sought to be made' is 'unlawful and void.' This provision has been made expressly applicable to common carriers by motor vehicle under the Act in 49 U.S.C. § 319. State Farm argues that Romagnoli's exposure under the form bill of lading to the requirement that he prosecute his claim in a particular venue, New York City, constitutes a 'limitation of liability,' and is therefore invalid. The district court rejected this argument, without reference to authority, on the basis that (1) the clause does not limit respondent's recovery of damages since the arbitrator may award the full amount claimed and (2) there is no need for the shipper, Romagnoli, to travel to New York because, as Aaacon made the concession below, he may submit his evidence to the arbitrator in writing. The statute, however, in its own terms expressly distinguishes the phrase 'limitation of liability' from 'limitation of the amount of recovery' and goes on to prohibit 'any limitation' regardless of 'manner or form.' The question to be decided is whether Aaacon's exposure to the possibility of having to defend against Romagnoli's claim on the merits in California is a 'liability' encompassed by the all-inclusive statutory prohibition against any 'limitation of liability.' We answer this in the affirmative.[10]
 
 
 9
 Section 20(11) is a remedial statute, one of the major purposes of which was to provide shippers in interstate commerce with the right to litigate claims against carriers in forums convenient for the shippers. It codified the already existing common law right of the shipper to proceed against a carrier in any forum that had jurisdiction over the carrier and the subject matter. It also gave the shipper the new right to proceed against the initial carrier in a case where damage or loss occurred while the shipment was in the hands of a subsequent carrier. Congressman Richardson commented for the committee on the amendment when it was reported out as follows:
 
 
 10
 One of the great complaints of the railroads has been--and, I think, a reasonable, just and fair complaint--that when a man made a shipment, say, from Washington, for instance, to San Francisco, Cal., and his shipment was lost in some way, the citizen had to go thousands of miles, probably, to institute his suit. The result was that he had to settle his damages at what he could get. What have we done? We have made the initial carrier, the carrier that takes and receives the shipment, responsible for the loss of the article in the way of damages. We save the shipper from going to California or some distant place to institute his suit.
 
 
 11
 40 Cong.Rec. 9580 (1906). Congressman Richardson's statement was quoted and relied upon by the Supreme Court in Atlantic Coast Line Railroad Co. v. Riverside Mills, 219 U.S. 186, 200--01, 31 S.Ct. 164, 55 L.Ed. 167 (1911), which rejected a constitutional challenge claiming that the statute effected a denial of the liberty of contract under the Fifth Amendment. The Court said that a carrier did not have the right to contract to limit its liability to its own lines.
 
 
 12
 It was not long, however, before the Supreme Court held that the Carmack Amendment preempted state statutes prohibiting carriers from contracting to limit their liability in other ways. In Missouri, Kansas & Texas Railway Co. v. Harriman, 227 U.S. 657, 33 S.Ct. 397, 57 L.Ed. 690 (1913), the Court upheld a contractual stipulation that the carrier was not liable unless the claim was made within 90 days after loss.[11] As the Court there said,
 
 
 13
 The liability imposed by the statute is the liability imposed by the common law upon a common carrier, and may be limited or qualified by special contract with the shipper, provided the limitation or qualification be just and reasonable, and does not exempt from loss or responsibility due to negligence.
 
 
 14
 Id. at 672, 33 S.Ct. at 401.
 
 
 15
 Reacting, Congress sought to close the 'special contract' loophole by enacting the first Cummins Amendment in 1915. The 1915 amendment, inter alia, inserted a provision declaring any limitation of liability to be unlawful and void (except as to goods on which a declared value has been stated in writing and as to which the commission may establish rates dependent upon declared value). The amendment also added provisos relating to the time for giving of notice and filing of claims and institution of suit and dispensed with the necessity for notice in the case of damage in transit due to negligence. During consideration of the bill, Senator Sutherland specifically stated, after reference to the Missouri, Kansas & Texas Railway case, supra, that
 
 
 16
 the effect of the bill which is now proposed . . . is to continue the provision of law respecting the common-law liability of the carrier, but to remove the condition which now exists in the statute under which the common carrier is permitted to exempt itself from liability by special agreement.
 
 
 17
 51 Cong.Rec. 9778 (1914).
 
 
 18
 A further amendment of the Carmack Amendment, the Newton Amendment of 1927, extended the shippers' rights still further by giving the shipper a right of action against the delivering carrier similar to the right of action previously afforded against the initial carrier. Congressman Newton, who reported out the bill, said
 
 
 19
 Mr. Chairman, there can be no question on the part of anyone but what there is conferred by the provisions of this bill a very valuable additional right in permitting the consignee to sue and hold the delivering carrier for any loss or damage caused in the course of the shipment from point of origin to point of destination. It will be of real worth and value to shippers not only because suit may be brought by the consignee in a jurisdiction which in almost every instance will be in his own county and State, but the granting of the right itself will avoid the necessity of commencing suit in many instances, for it will induce the carrier to make settlement.
 
 
 20
 67 Cong.Rec. 12764 (1926).
 
 
 21
 In our view, in light of the legislative history of the Carmack Amendment to the Hepburn Act of 1906, as amended, the right of the shipper to sue the carrier in a convenient forum of the shipper's choice is a right that Congress intended to codify. The language in § 20(11) since its initial enactment, that 'nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under the existing law,' is intended to preserve to the shipper his full common law right of action against a carrier in any forum in which an action can properly be brought. So, too, the prohibitions added in the Cummins and Newton Amendments against contracts, regulations and other devices by which carriers seek to limit their 'liability' must be construed to apply not merely to their liability for monetary damages but to the carrier's liability to suit in the forum of the shipper's choice. It is sufficient to point out that Aaacon could not conceivably contract with its customers to provide that suits could not be brought against it except in a New York City court. Why, therefore, should it be permitted to arrive at the same result by providing that no suit at all should be brought but that a claim must be 'settled by arbitration' in New York City?
 
 
 22
 The foregoing construction of Section 20(11) is consistent with analogous Supreme Court and Second Circuit cases. It also conforms to the Interstate Commerce Commission's own view of the meaning and history of the Carmack Amendment.
 
 
 23
 In Boyd v. Grand Trunk Western Railroad Co., 338 U.S. 263, 265, 70 S.Ct. 26, 94 L.Ed. 55 (1949), the Court held that the right of an employee to bring suit in any eligible forum is included within the Federal Employers Liability Act provision voiding any contract, rule, regulation or device the purpose or intent of which is to enable a common carrier to exempt itself from liability. So, too, in The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15, 92 S.Ct. 1907, 1916, 32 L.Ed.2d 513 (1973), the Court indicated in dicta that the principle set forth in Boyd is not restricted to FELA cases but has general application. The Court, citing Boyd, stated that a 'contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought . . ..' Id. In Krenger v. Pennsylvania Railroad Co., 174 F.2d 556, 559 (2d Cir.), cert. denied, 338 U.S. 866, 70 S.Ct. 140, 94 L.Ed. 531 (1949), before Boyd, supra, a contract limiting venue in an FELA case to the place of residence or the place of accident rather than the place of the defendant carrier's doing business was held void as a limitation of liability prohibited by statute. In Indussa Corp. v. S.S. Ranborg, 377 F.2d 200 (2d Cir. 1967) (en banc), we struck down a forum selection clause in a bill of lading as inconsistent with the provision in Section 3(8) of the Carriage of Goods by Sea Act, 46 U.S.C. § 1303(8), prohibiting any clause, covenant or agreement in a contract of carriage lessening the carrier's liability for negligence, fault or dereliction of statutory duties otherwise than as provided in the Act. While the court expressly stated that the ruling did not 'touch the question' of arbitration clauses in bills of lading, 377 F.2d at 204 n. 4, its reference in the next sentence to charter parties indicates that its concern was primarily focused upon those commercial situations in which the economic strength and bargaining power of the parties is roughly equal. As noted earlier, that is not the case in most shipping contracts executed between Aaacon and its customers. In any event, the fact is that Section 2 of the Federal Arbitration Act, adopted in 1925, validated a written arbitration in any maritime transaction which was specifically defined in Section 1 to include bills of lading of water carriers. Whereas the Arbitration Act specifically provides that the validity of arbitration clauses must be judged by the same, not different, standards as those applicable to any other contract provisions, 9 U.S.C. § 2, the sweeping prohibition in the Carmack Amendment against limitations of liability indicates that the scope of arbitration requirements in common carrier bills of lading is not to be left wholly to contractual arrangement. Indussa does stand for the proposition, analogous here, that from a practical standpoint to require an American plaintiff to assert his claim only in a distant court 'lessens the liability of the carrier quite substantially, particularly when the claim is small.' 377 F.2d at 203. See also G. Gilmore & C. Black, The Law of Admiralty § 3--25, at 145--46 n. 23 (2d ed. 1975).
 
 
 24
 Our conclusion that the arbitration provision in Aaacon's bill of lading is an impermissible limitation on the carrier's liability has also been reached by the ICC itself through the decision of the chief of the ICC Tariff Section. He has rejected, as a limitation of liability under Section 20(11), a tariff filed by Aaacon containing an arbitration clause with the venue limitation, stating 'It was plainly the intent of Congress to allow injured parties to pursue their claims against carriers, without hindrance, in any jurisdiction in which such carriers were doing business or through which they were conducting transportation activities.'[12] Under 49 U.S.C. § 317(a) the Commission is authorized to reject any tariff filed with it which is not in consonance with that section's requirements[13] and Commission regulation. Any tariff rejected under that section by the Commission is void and its use is unlawful. Note 8 supra. The ICC, through the chief of its Section of Tariffs, by letter of June 15, 1971, clearly rejected Aaacon's arbitration provision, stating specifically that to provide service only upon imposing such an unjust and unreasonable condition as compulsory arbitration in New York City is contrary to the common carrier's obligations set forth in Section 216(b) of the Interstate Commerce Act, 49 U.S.C. § 316(b), and the terms of the carrier's certificate.
 
 
 25
 Aaacon contends that this rejection was ineffective for a number of reasons. While conceding that it took no further steps with regard to the letter of June 15, 1971, which it would be required to do to avoid administrative finality under 49 U.S.C. § 17(6), (9),[14] Aaacon argues that it did not do so because at the time its tariff filing was gratuitous, that is, the Commission had not asserted any jurisdiction over carrier loss and damage claim procedures. Aaacon claims also that three events have occurred which show that the ruling made by the chief of the Tariff Section was incorrect: first, the Commission 'approved arbitration' of shipper-carrier claims in Ex parte No. 263, Loss and Damage Claims, 340 ICC 515, 578 et seq. (1972); second, several cases have held that 49 U.S.C. § 20(11) 'limited venue of shipper litigation'; and finally the Second and Third Circuit Courts of Appeals decided cases upholding and enforcing Aaacon's arbitration provision against attacks based upon 49 U.S.C. § 20(11).
 
 
 26
 The fact that the Commission was reviewing the question of the handling of claims in Ex parte No. 263 at the time the section chief's ruling was made is not a proper reason for ignoring his ruling. The possibility that at some future time a regulatory agency may take a different position is not an acceptable reason for violating a present order. Parenthetically we may say that there is no basis whatsoever for the lower court's implication that the rejection letter was not a final act of the Commission, since ICC Internal Minute No. 74 expressly charges the Section of Tariffs to act on behalf of the Commission in examining and rejecting tariffs containing unlawful provisions. This internal directive makes clear that any tariff rejection is to be in the name of the chief of the Section of Tariffs or other designated officers, note 14 supra. There being no further steps necessary to be taken by the Commission in evaluating the tariff in question, the Tariff Section's rejection of the Aaacon venue limitation is thus a final act of the Commission. See generally National Automatic Laundry & Cleaning Council v. Schultz, 143 U.S.App.D.C. 274, 443 F.2d 689, 698--702 (1971).
 
 
 27
 Aaacon's reading of Ex parte No. 263 as inconsistent with the interpretation of Section 20(11) in this opinion is plainly unmeritorious. The Commission's decision in Ex parte No. 263 dealt generally with the use of arbitration as a means of settling shipper claims; nothing in Ex parte No. 263 purports to approve the type of forum-limitation clause challenged in this appeal. The purpose of the proceeding in Ex parte No. 263 was to determine what action the ICC should take with respect to carriers' practices in handling loss and damage claims. All carriers subject to the Act were made parties to it. The Commission considered three different kinds of proposals for the handling of shipper claims: one, for the settlement of disputed claims by arbitration; two, a proposal for the establishment of small claims courts; and three, a proposal to give the Commission itself power to hear and determine the disputes. 340 ICC at 577--97. Contrary to Aaacon's claims and the district court's interpretation, the decision reached was that legislation requiring arbitration should not be proposed. The Commission determined instead to hear and resolve such disputes itself. Id. at 718--21, 725. As the Commission said in reference to the remedy of arbitration, 'its quite limited application to freight loss and damage claims in the past, particularly the recent past in view of the controversies that have been brought to light in this proceeding, legitimately generates substantial questions as to the adaptability of arbitration to this type of situation.' Id. at 578 (emphasis added). To be sure, the Commission did go on to say:
 
 
 28
 In light of all of the above advantages and disadvantages, and in view of the fact that probably as many as 80 to 90 percent of the loss and damage claims are or can be processed to a satisfactory conclusion by carriers on documentary evidence alone, the utilization of arbitration beyond that limited amount which now exists in the surface transportation industry (other than in labor disputes), while highly commendable and thoroughly encouraged by this Commission, simply does not and perhaps cannot fully meet directly two major questions that continue to trouble us in this aspect of this proceeding.
 
 
 29
 Id. at 580--81. But it refused to suggest arbitration as a solution to freight loss and damage claims. The regulations which the Commission did adopt to govern the methods by which carriers should handle claims are shown at 49 C.F.R. § 1005, and they do not include arbitration, and certainly not forum-limited arbitration, as an alternative.
 
 
 30
 The second intervening event which Aaacon argues makes the ICC tariff rejection based on an improper reading of Section 20(11) is that '(s)everal cases held that 49 U.S.Code 20(11) limited venue of shipper litigation.' Appellee's Brief at 46, citing Litvak Meat Co. v. Baker, 446 F.2d 329, 337 (10th Cir. 1971), and W. D. Lawson & Co. v. Penn Central Co., 456 F.2d 419, 423 (6th Cir. 1972). Upon examination, however, Litvak Meat Co. v. Baker and W. D. Lawson & Co. v. Penn Central Co. deal only with the fourth proviso of the Carmack Amendment, which limits jurisdiction over delivering carriers to the state 'through or into which the defendant carrier operates a line of railroad.' 49 U.S.C. § 20(11). Indeed, Litvak Meat Co. points out that the Carmack Amendment does not limit personal jurisdiction where the action is brought on a claim at common law or for the carrier's negligence, rather than on the bill of lading. 446 F.2d at 337. See also Aaacon Auto Transport, Inc. v. Eichler, 392 F.Supp. 926, 927--28 (E.D.N.Y.1975) (subject matter jurisdiction under Carmack Amendment limited to actions which 'arise out of' the bill of lading). The limitation provisions as to the jurisdiction of the person of the carrier in Section 20(11) by no means support the contractual venue limitation which Aaacon seeks to sustain here.
 
 
 31
 It is true that in Aaacon v. Levine, 456 F.2d 1335 (2d Cir. 1972), and Aaacon v. Jacobson, 475 F.2d 1394 (3d Cir. 1973), this court affirmed from the bench and in reliance on that affirmance the Third Circuit affirmed by order two district court cases granting Aaacon's motion to compel arbitration. We do not know what the practice is in the Third Circuit, but in our circuit, of course, affirmances from the bench have no weight and should not be cited. United States v. Joly, 493 F.2d 672, 675--76 (2d Cir. 1974). This is for good reason, as Aaacon v. Levine demonstrates. In that case the claim made by the shipper was that the Carmack Amendment entirely prohibited the use of arbitration clauses in carriers' bills of lading. This argument was not directed to the forum limitation clause imposed on the place of arbitration, which is understandable since the shipper in that case, Mr. Levine, was a resident of New York who had done business with Aaacon in New York and sued Aaacon in the New York City Civil Court. He was a practicing New York attorney appearing pro se, and evidently did not cite any authority to the district court in support of the argument that the arbitration clause was unfair as applied to him. See 71 Civ. 4004.
 
 
 32
 The final argument raised by Aaacon against application of Section 20(11) is that on September 7, 1972, approximately three months after the contract between Romagnoli and Aaacon was signed, the Commission approved a provision, Aaacon's Claims Tariff 'Rule 20,' or rather, Item 20 in MF ICC $9, authorizing arbitration at a given location on lost or damaged shipment claims. The tariff states in part, 'Carrier's bill of lading shall provide for arbitration and situs thereof pursuant to federal law of unresolved disputes over loss and damage claims in advance of shipments.' Evidently this was reviewed by Charles E. Thompson, chief of the Tariff Examining Branch of the Commission, although not by Mr. McCarthy, chief of the Section of Tariffs, who had rejected the earlier tariff by letter of June 15, 1971. There is nothing to indicate that Mr. Thompson interpreted this clause in Item 20 to mean that Aaacon could directly flout the June 15, 1971, letter of Mr. McCarthy. The phrasing of Item 20 was quite innocuous, and because of the phrase 'pursuant to federal law' in a way almost misleading. Upon inquiry by State Farm counsel on July 8, 1974, the Commission denied through Mr. Thompson that the letter of September 7, 1972, in any way rescinded the previous rejection of the provisions of the filing of claims in the tariffs by Mr. McCarthy. In reviewing Item 20, Mr. Thompson stated in a letter ot Aaacon's counsel on July 11, 1974, that the provision relative to arbitration 'directly conflicts with' the rules established in Ex parte No. 263, see 49 C.F.R. § 1005, setting forth the procedures for carriers to follow in the disposition of claims. It is plain enough, in our view, that the provision limiting venue to New York City has been held invalid by the Commission and is not now subject to collateral attack in this court. In any event, any action taken by the Commission subsequent to the date on which Romagnoli and Aaacon entered into the contract in question could provide no relief to appellee in this litigation. We hold that, as of June, 1972, when Romagnoli signed the agreement with Aaacon purportedly incorporating the bill of lading of the reverse side, the tariff upon which that bill of lading was based had been rejected by the ICC and was therefore void under 49 U.S.C. § 317(a).
 
 
 33
 An additional indication that the ICC's position on this matter has not shifted is that in Decision No. MC--C--7287, Aaacon Auto Transport, Inc., November 30, 1973, ICC Administrative Law Judge Joseph A. Reilly considered at length Aaacon's manner of exploiting its bill of lading, essentially the same as the one it was using in Mr. Romagnoli's case, and concluded that 'the forced arbitration of claims in New York City . . . is palpably unfair to the users of the service of the respondent and imposes on such users an onerous burden they should not be made to bear.' He went on to say that the question of forced arbitration in New York City
 
 
 34
 becomes particularly acute in light of the fact that the vest majority of claims here involved are under $1,000 . . . (and that it) is obvious that for a claimant residing several hundred or several thousand miles distant from New York City that the costs of travel and incidents thereto would exceed the amount of the claim. Under such circumstances, the claimant has no recourse but to abandon his claim despite the justice of it.[15]
 
 
 35
 Subsequent to the date of the argument of the present appeal, Division One of the Commission has found that Aaacon engaged in unjust and unreasonable practices in violation of Sections 20(11), 219 and 216(b) of the Interstate Commerce Act, and has entered a cease and desist order to become effective June 1, 1976. Aaacon Auto Transport, Inc.--Investigation and Revocation of Certificates, 124 MCC 493 (Div. 1, Apr. 7, 1976), note 15 supra.[16]
 
 
 36
 The Division's findings were that Aaacon has 'conducted itself in such a way as to discourage the filing of damage claims and has otherwise sought to avoid its responsibilities as a motor common carrier . . .' Id. at 503--04. The Division did not decide whether the incorporation of an arbitration clause into Aaacon's bill of lading is acceptable or even desirable. Id. at 506. But it did find that 'in this instance, (the arbitration clause was) used in a manner to discourage and confuse prospective and actual claimants.' Id. Evidently Aaacon argued to the Division that its agreement would not legally require that arbitration be held in New York City; but the Division pointed out that the wording of it 'would lead the overage individual to the conclusion that arbitration must be held in New York City, and a prospective claimant, when faced with the expense and inconvenience of bringing an action in New York City, might well forego seeking relief.' Id. Aaacon by post-appeal correspondence contends that this conclusion is irrelevant since here it is the carrier that seeks to enforce the arbitration provision. We think the language of the Commission speaks for itself on the question whether the arbitration provision complies with Section 20(11). It adds further support to our statutory conclusion that the venue limitation constitutes a limitation of liability and, as such, as invalid.
 
 
 37
 Aaacon argues that Aaacon Auto Transport, Inc. v. Ninfo, 490 F.2d 83 (2d Cir. 1974), plus assorted district court cases, e.g., Aacon Auto Transport, Inc. v. Echols, Docket No. 75 Civ. 1268 (E.D.N.Y. Feb. 17, 1976); Aaacon Auto Transport, Inc. v. Teafatiller, 334 F.Supp. 1042, 1044 (S.D.N.Y.1971), are authority for its position that the arbitration limitation clause is valid. Ninfo was an appeal by Aaacon from an order granting a shipper's motion to change venue, in a proceeding to compel arbitration, to the federal district court for the Eastern District of Wisconsin where she had brought suit in the state court. The court dismissed the appeal, suggesting, however, that the district court should proceed to try the issue of the validity of the agreement of arbitration in terms of whether or not the agreement was ever entered into. No mention is made in the case whatsoever of the arguments advanced here under the Interstate Commerce Act. Similarly, Aaacon Auto Transport, Inc. v. Teafatiller, supra, upheld the agreement to arbitrate as not required to be signed by the party to be charged, as to jurisdictional amount even though less than $10,000 was involved, and as to the validity of service of process by mail in California, and refused to transfer venue to California. No mention is made in Judge Brieant's opinion of any of the arguments under the Interstate Commerce Act. Similarly, as we have reviewed other district court cases in which appellee has been permitted to obtain arbitration in New York, we see that, with but one exception, none of them have presented the very effective arguments made by State Farm here. The exception was Echols, in the Eastern District of New York, which followed the decision of Judge Costantino from which this appeal was taken. District Judge Chandler in Aluminum Products Distributors, Inc. v. Aaacon Auto Transport, Inc., 404 F.Supp. 1374 (W.D.Okl.1975), has on the other hand held the Aaacon arbitration clause invalid and unenforceable, not approved by the Interstate Commerce Commission, grossly unfair and an improper attempt to limit Aaacon liability. While an appeal is still pending in the Tenth Circuit on the Aluminum Products decision, we believe it indicates that the prior district court cases in which the arguments relating to the Interstate Commerce Act are not pressed lend very little support for Aaacon's position at the present appeal.
 
 
 38
 We have already concluded that the arbitration limitation clause does effect a limitation on the carrier's liability in that it severely prejudices the claimant's possibility for recovery of damages. Judge Costantino, however, felt this prejudice to be insubstantial since, in his view, there was no need for the shipper, Romagnoli, to travel to New York. This was based upon Aaacon's concession that Romagnoli could send a simple notarized letter to the arbitrator setting forth the facts of which he had personal knowledge, and that if Aaacon had any questions to pose to Romagnoli it would simply pose them by letter. We are totally unimpressed with this 'concession.' Our question of law is as to the validity of the provision limiting arbitration venue as a 'limitation of liability.' The concession in no way mitigates the burden, expense and prejudice to shippers created by Aaacon's bill of lading. Even in the Romagnoli case, the testimony of the adjuster who inspected the damaged vehicle may not effectively be presented by letter, and Aaacon's concession does not extend to this testimony in any event. Aaacon has not waived the provision in its bill of lading requiring adherence to the Rules of Evidence, note 5 supra, so that it would be free to argue that the written testimony, especially if not subject to cross-examination in front of the arbitrator, should be given littel weight by him. The condition of the vehicle before and after the accident, the qualifications of the shipper's expert and the accuracy of the expert's testimony on damages all are not covered by the concession so heavily relied upon by Judge Costantino. The judge evidently was misled by the language in Ex parte No. 263 that probably as much as 80 to 90 percent of the loss and damage claims can be processed to a satisfactory conclusion by carriers on documentary evidence alone, 340 ICC at 580, 595. But the Commission was not talking about the handling of an arbitration case; rather it was discussing the processing of claims by the carriers themselves. Id. at 595.
 
 
 39
 Additionally, the judge stated that Mr. Romagnoli's interests could be adequately represented at the New York arbitration by State Farm's local counsel. That certainly would not be true if there were not a national insurer involved in the case. But even assuming the relevancy of State Farm's presence as the insurer, it is the expense and prejudice inherent in trying to establish a prima facie case with witnesses who are a continent away from New York counsel that makes the bill of lading operate in effect as a limitation of liability. Judge Costantino pointed to the facts that the contract was arranged in Georgia, the car was tendered in South Carolina, the alleged incident took place in Washington, the driver resides in Wyoming, Aaacon's records are in New York and the owner resides in California as indicating that no one state is the obviously best place to hold a hearing to arbitrate the claim. This conclusion, however, does not follow from the facts. The expert witnesses would have to be familiar with the costs of repair and the value of used motor vehicles in California; Mr. Romagnoli resides in California; Aaacon has offices in California; and there is no indication that its records in New York would have any bearing on the claim.
 
 
 40
 Finally, the lower court suggested that it would be harmful and perhaps unjust to Aaacon to establish a rule requiring it to litigate, or arbitrate, claims at various places in the country at great expense. However, there is nothing in the record to indicate that it would cost Aaacon any more to defend a claim in California, or in any other forum convenient to its customer, than in New York. The potential witnesses are not in New York. Indeed, the burden is on the claimant to proceed and to produce witnesses.
 
 
 41
 In light of the position that we have taken in respect to the Interstate Commerce Act, it is unnecessary for us to reach the contract-of-adhesion/unconscionability arguments. Indeed it is not necessary for us to consider at this time whether the basic requirement that a claimant arbitrate his claim is inconsistent with Section 20(11). Cf. Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953) (agreement for arbitration of claims between broker and his customer void under § 14 of Securities Act of 1933).[17] This is obviously a matter for determination in the first instance by the ICC in a proceeding similar to that it held in Ex parte No. 263. Aaacon argues that even if the words 'in New York' were not contained in the arbitration clause the result in the court below would be the same since both State Farm and Aaacon are amenable to process in New York, and the petition for enforcement of the arbitration agreement was filed in New York federal court. We decline to accept this twelfth-hour invitation of Aaacon's to amend its pleadings and its bill of lading. As it stands, the arbitration clause containing the limitation of venue to New York is invalid as a limitation of liability under 49 U.S.C. § 20(11). Moreover as shown above, the tariff upon which Aaacon relies to sustain the arbitration clause had been rejected by the ICC and thus, under 49 U.S.C. § 317(a), was void at the time that Romagnoli entered into this contract with Aaacon.
 
 
 42
 Judgment reversed.
 
 
 
 [1]
 The vast majority of claims against Aaacon have been said to be under $1,000 by Administrative Law Judge Joseph A. Reilly in MC--C--7287 (Nov. 30, 1973) p. 8, affirmed in substance an Aaacon Auto Transport, Inc.--Investigation and Revocation of Certificate, 124 M.C.C. 493 (Div. 1, Apr. 7, 1976). Aaacon is self-insured and handles its own claims to the extent of the first $1,000. Id
 
 
 [2]
 In the case at bar, as in many cases referred to by Administrative Law Judge Reilly, a casual driver who is referred to in the shipper's contract as an 'independent contractor' is used, rather than an Aaacon employee. Cf. Avis Rent a Car System, Inc. v. United States, 503 F.2d 423 (2d Cir. 1974) ('car shuttlers' hired by Avis to move Avis cars between rental locations)
 
 
 [3]
 9 U.S.C. § 4 provides in part:
 A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . .
 
 
 [4]
 The question whether an injunction against the pending state court proceeding could properly be ordered by the district court has not been raised by either party at this appeal. See 28 U.S.C. § 2283. In view of our disposition of the merits in this case, we need not reach this troubling issue
 
 
 [5]
 The bill of lading goes on to provide
 Upon said arbitration, the arbitrator's jurisdiction shall be limited to enforcement and application, without exception, of the provisions of this agreement and, at the request of any party, of the rules and laws of evidence of the state in which said arbitration is held. Should the arbitrator vary or fail to apply and enforce, strictly, any provision of this agreement, or said rules and laws of evidence, for any reason whatsoever, said arbitrator shall be ousted of jurisdiction, and any award made by said arbitrator shall be null and void, and thereafter arbitration shall be recommenced in accordance herewith.
 
 
 [6]
 According to an affidavit in the record, covering January, 1972, through June, 1974, Aaacon instituted 39 proceedings to stay out of state actions in Supreme Court, New York County, of which 10 were apparently against insurance companies, 11 in the Southern District of New York and six in the Eastern District of New York, of which two each were apparently against insurance companies
 
 
 [7]
 49 U.S.C. § 20(11) provides in part:
 Any common carrier, railroad, or transportation company subject to the provisions of this chapter receiving property for transportation from a point in one State or Territory or the District of Columbia to a point in another State, Territory, District of Columbia, or from any point in the United States to a point in an adjacent foreign country shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass within the United States or within an adjacent foreign country when transported on a through bill of lading, and no contract, receipt, rule, regulation, or other limitation of any character whatsoever shall exampt such common carrier, railroad, or transportation company from the liability imposed; and any such common carrier, railroad, or transportation company so receiving property for transportation from a point in one State, Territory, or the District of Columbia to a point in another State or Territory, or from a point in a State or Territory to a point in the District of Columbia, or from any point in the United States to a point in an adjacent foreign country, or for transportation wholly within a Territory, or any common carrier, railroad, or transportation company delivering said property so received and transported shall be liable to the lawful holder of said receipt or bill of lading or to any party entitled to recover thereon, whether such receipt or bill of lading has been issued or not, for the full actual loss, damage, or injury to such property caused by it or by any such common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass within the United States or within an adjacent foreign country when transported on a through bill of lading, notwithstanding any limitation of liability or limitation of the amount of recovery or representation or agreement as to value in any such receipt or bill of lading, or in any contract, rule, regulation, or in any tariff filed with the Interstate Commerce Commission; and any such limitation, without respect to the manner or form in which it is sought to be made is declared to be unlawful and void: . . . Provided further, That nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under the existing law: Provided further, That all actions brought under and by virtue of this paragraph against the delivering carrier shall be brought, and may be maintained, if in a district court of the United States, only in a district, and if in a State court, only in a State through or into which the defendant carrier operates a line of railroad . . ..
 
 
 [8]
 49 U.S.C. § 317(a) provides:
 Every common carrier by motor vehicle shall file with the Commission, and print, and keep open to public inspection, tariffs showing all the rates, fares, and charges for transportation, and all services in connection therewith, of passengers or property in interstate or foreign commerce between points on its own route and between points on its own route and points on the route of any other such carrier, or on the route of any common carrier by railroad and/or express and/or water, when a through route and joint rate shall have been established. . . . The tariffs required by this section shall be published, filed, and posted in such form and manner, and shall contain such information, as the Commission by regulations shall prescribe; and the Commission is authorized to reject any tariff filed with it which is not in consonance with this section and with such regulations. Any tariff so rejected by the Commission shall be void and its use shall be unlawful.
 
 
 [9]
 We need not reach appellant's argument that the venue limitation is invalid under 49 U.S.C. § 316(b) which provides:
 It shall be the duty of every common carrier of property by motor vehicle . . . to establish, observe, and enforce just and reasonable rates, charges, and classifications, and just and reasonable regulations and practices relating thereto . . ..
 
 
 [10]
 The cases which have upheld the Aaacon provision have done so without reference to Section 20(11), evidently on the assumption that these bills of lading are like other commercial contracts. See discussion in text infra
 
 
 [11]
 The Court also upheld a reasonable differentiation for rates dependent upon declared value. Under the second proviso to Section 20(11) in certain specific instances, not relevant here, where a value has been declared limitation of liability is permissible
 
 
 [12]
 Letter from James A. McCarthy, Chief of the ICC Tariff Section, to Aaacon, June 15, 1971
 
 
 [13]
 Section 317(c) of 49 U.S.C. requires approval of changes in tariffs, such as that proposed in Aaacon's submission that was rejected by Chief McCarthy on June 15, 1971. See text at note 12 supra. Section 317(d) of 49 U.S.C. requires compliance in tariffs with other provisions of the Act, including § 316(b), note 9 supra, and by implication § 20(11), note 7 supra
 
 
 [14]
 The ICC has authorized the Chief of its Section of Tariffs to review proposed tariffs filed with the Commission to assure that they 'comply with the law and the applicable rules and regulations, rejecting those which fail of such compliance.' ICC Internal Minute No. 74. It is true that the decisions of the Tariff Section Chief are not decisions made by 'the Commission, a division, an individual Commissioner, or a board (of employees designated to hear the matter),' so as to qualify for Commission review under 49 U.S.C. § 17(6). However, such decisions are made under the authority of the Commission, and appeal within the Commission has been provided in 49 C.F.R. §§ 1100.101--.102
 
 
 [15]
 Other practices found unreasonable, findings which were upheld in Aaacon Auto Transport, Inc.--Investigation and Revocation of Certificate, 124 MCC 493, 504--05 (Div. 1, Apr. 7, 1976), were denying claims on the basis of an 'inherent mechanical defect,' or for an 'act of God' without real investigation, or because of the execution of a 'clear receipt,' i.e., paying the driver and receipting for the car. The Commission order in MC--C--7287 was issued on April 7, 1976. It states in part:
 It is further ordered, That in No. MC--C--7287, respondent AAACon Auto Transport, Inc., be, and it is hereby, ordered and required to cease and desist, and thereafter refrain and abstain from all of those practices found in the said report to be unjust and unreasonable in violation of sections 20(11), 219, and 216(b) of the Interstate Commerce Act, as well as those operations, in interstate or foreign commerce, of the character found in said report to be unlawful.
 
 
 [16]
 The Division noted that Aaacon's exceptions to the administrative law judge's 32-page report themselves covered 756 pages, 124 MCC at 503
 
 
 [17]
 All we need say here is that the prohibition in Section 20(11) invalidating the venue limitation for arbitration is not overridden by the Arbitration Act, a conclusion further supported by the language of Wilko v. Swan, 346 U.S. 427, 437, 74 S.Ct. 182, 98 L.Ed. 168 (1953), which relies on Boyd v. Grand Trunk Western R. Co., 338 U.S. 263, 70 S.Ct. 26, 94 L.Ed. 55 (1949)