**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GARY SMALLWOOD,
　　　　　　*Plaintiff-Appellee,*

　　　　　v.

ALLIED VAN LINES, INC., and
SIRVA, INC., Delaware companies,
DBA Allied International,
　　　　　　*Defendants-Appellants,*

　　　　　and

ALLIED PICKFORDS, LLC (ABU
DHABI), a UAE limited liability
company, DBA Allied
International; ATLAS TRANSFER &
STORAGE CO., a California
company, DBA Allied
International,
　　　　　　*Defendants.*

No. 09-56714

D.C. No.
3:08-cv-02196-
BTM-WVG

OPINION

Appeal from the United States District Court
for the Southern District of California
Barry T. Moskowitz, District Judge, Presiding

Argued and Submitted
February 9, 2011—Pasadena, California

Filed October 18, 2011

Before: Alex Kozinski, Chief Judge, Michael Daly Hawkins
and Raymond C. Fisher, Circuit Judges.

Opinion by Judge Fisher

19073

**COUNSEL**

Andrew G. Wagner and Michael A. Hession (argued), Clyde & Co US LLP, San Francisco, California, for the defendants-appellants.

Haig V. Kalbian, Michelle D. Douglas (argued) and Damira Kamchibekova, Kalbian & Hagerty, LLP, Washington, D.C., for the plaintiff-appellee.

**OPINION**

FISHER, Circuit Judge:

Gary Smallwood contracted with Allied Van Lines, Inc. and SIRVA, Inc. (collectively, AVL) to move some of his household goods from southern California to the United Arab Emirates (UAE) and to move the remainder of the goods — including a box full of firearms and ammunition — to storage. Instead, AVL shipped his weapons to the UAE. When UAE officials discovered Smallwood's weapons, they arrested him, imprisoned him for 11 days and tricked him into pleading

guilty to smuggling firearms. Smallwood alleges that he is facing deportation from the UAE and sues AVL based on various tort and contract theories. We must decide whether AVL may compel Smallwood to arbitrate pursuant to a foreign arbitration clause in their shipment contract. We hold that the contract's foreign arbitration clause is unenforceable.

The district court denied AVL's motion to compel arbitration, concluding that the shipment was governed by the Carmack Amendment, 49 U.S.C. § 14706, and that the statute precludes enforcement of foreign arbitration clauses.[1] AVL argues that the district court misinterpreted Carmack and created an unnecessary conflict with federal arbitration law, which, according to AVL, requires enforcement of the arbitration clause regardless of the Carmack Amendment. We affirm because the district court correctly interpreted Carmack to preclude foreign arbitration clauses; and Carmack, having been enacted subsequent to the federal arbitration statutes, controls this case.

## I.   Background

Because this case is still at the pleading stage, we assume the facts alleged in the complaint to be true. Smallwood is a U.S. citizen who resided in San Diego, California until September 2007, when he accepted a job in Abu Dhabi, UAE. Smallwood contracted with a UAE company, Allied Pickfords, to ship some of his belongings to the UAE and to store the remainder in California. Allied Pickfords engaged three affiliates incorporated in the United States — Atlas Transfer & Storage Co. (Atlas), Allied Van Lines and SIRVA — col-

---

[1]Carmack has been codified at several different sections of Title 49 since its enactment. Originally codified at 49 U.S.C. § 20(11), Carmack was recodified in 1978 at 49 U.S.C. § 11707 and then recodified again in 1996 at 49 U.S.C. §§ 11706, 14706. The current version of Carmack applicable to motor carriers, including the defendants-appellants in the present case, is 49 U.S.C. § 14706.

lectively referred to in the complaint as "Allied International"
— to assist with the move and storage. In September 2007, an
Allied International representative met Smallwood at his
home in San Diego, took note of which goods were destined
for shipment to the UAE and which for storage in California
and then packed up Smallwood's belongings. The goods were
boxed separately but loaded onto one truck. Shortly thereafter,
Smallwood moved to the UAE.

Smallwood did not receive a bill of lading when Allied
International received his goods in September 2007. Instead,
he received two forms — one entitled "Local Household
Goods Descriptive Inventory" that listed the goods destined
for storage and one entitled "Descriptive Inventory" that listed
the goods destined for the UAE. After Smallwood moved to
the UAE, he received a document on Allied Pickfords' letter-
head entitled "Acceptance of Quotation." The document is a
contract, but does not style itself as a through bill of lading.
Importantly, the Acceptance of Quotation includes an arbitra-
tion clause:

> Any disputes in relation to the conclusion, imple-
> mentation, interpretation, cancellation, dissolution or
> invalidity of the contract or stemming therefrom or
> connected thereto in any form shall be referred to
> arbitration in accordance with the Dubai Chamber of
> Commerce and Industry Commercial Conciliation
> and Arbitration Regulation.

The Acceptance of Quotation was the last written agreement
between the parties before Allied International allegedly
shipped some of the storage goods, including the box of fire-
arms, to the UAE. When UAE officials discovered Small-
wood's firearms, an Allied International employee asked
Smallwood to come to the port in Abu Dhabi to "straighten
things out." UAE police arrested Smallwood when he arrived
at the port. He was later interrogated, imprisoned and con-

victed of gun smuggling. Smallwood is currently in deportation proceedings.

Based on the mistaken shipment of his firearms, Smallwood filed suit in California state court, alleging six causes of action: (1) negligence and negligent infliction of emotional distress, (2) intentional infliction of emotional distress, (3) defamation, (4) breach of fiduciary duty, (5) fraudulent deceit and (6) breach of contract. He named as defendants Allied Van Lines, SIRVA, Allied Pickfords and Atlas. The defendants removed the case to federal court on the theory that the Carmack Amendment preempted Smallwood's state-law claims.

Once in federal court, AVL moved to dismiss Smallwood's state law claims as preempted by the Carmack Amendment. The district court agreed in part, dismissing counts 1, 2 and 4, but granting Smallwood leave to amend his complaint to reinstate these claims under Carmack. The court concluded that the contract claim was preempted only insofar as it related to the agreement to ship his goods to the UAE, not to the extent it related to the agreement to store goods in California. The court found his remaining claims of intentional infliction of emotional distress, defamation and fraudulent deceit not preempted.

AVL also moved to compel arbitration. The district court concluded that "the arbitration clause included in the bill of lading is unenforceable" with respect to Smallwood's Carmack claims.[2] AVL appeals that decision. We must decide the extent to which Smallwood can be compelled to arbitrate his claims in light of the district court's preemption ruling. We have jurisdiction under 9 U.S.C. § 16(a)(1)(B) to review the district court's order refusing to compel arbitration and juris-

---

[2]The district court explicitly clarified that it was not deciding whether the arbitration clause could be enforced with regard to non-Carmack claims.

diction under 28 U.S.C. § 1331 to review the meaning of the Carmack Amendment.[3]

## II.    Jurisdiction

**[1]** Before reviewing AVL's motion to compel arbitration, we address whether the district court had subject matter jurisdiction. Generally, "[t]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Additionally, "[u]nder the 'artful pleading' doctrine, a well-pleaded state law claim presents a federal question when a federal statute has completely preempted that particular area of law." *Hall v. N. Am. Van Lines, Inc.*, 476 F.3d 683, 687 (9th Cir. 2007) (citation omitted). Here, the district court had subject matter jurisdiction if at least one of Smallwood's claims was completely preempted by the Carmack Amendment. *See id.* at 687-88.[4]

**[2]** Smallwood argues that none of his claims is preempted by the Carmack Amendment because all involve only a contract for intrastate storage. We disagree. "It is well settled that the Carmack Amendment is the exclusive cause of action for interstate-shipping contract claims alleging loss or damage to property" and thus completely preempts such claims. *Id.* at 688. Smallwood's breach of contract claim alleges that "Allied International breached the contract by failing to detect that shipment of the Weapons . . . was in violation of U.S., international and UAE law." This breach plainly arises from an interstate shipping contract, making Carmack the exclusive

---

[3]The partial grant of AVL's motion to dismiss the complaint was not a final order and is thus not before us on appeal. *See California v. Harvier*, 700 F.2d 1217, 1218 (9th Cir. 1983).

[4]The parties are not diverse, so the district court needed federal question jurisdiction for removal to be proper.

cause of action. Because at least one of Smallwood's claims was preempted by the Carmack Amendment, the district court had subject matter jurisdiction.[5]

We review de novo both the denial of a motion to compel arbitration, *see Bushley v. Credit Suisse First Boston*, 360 F.3d 1149, 1152 (9th Cir. 2004), and the meaning and application of the Carmack Amendment, *see Regal-Beloit Corp. v. Kawasaki Kisen Kaisha Ltd.*, 557 F.3d 985, 990 (9th Cir. 2009), *rev'd on other grounds*, 130 S. Ct. 2433.

## III.   Discussion

AVL argues that the district court erred for either of two reasons: (1) the Carmack Amendment permits foreign arbitration clauses; or (2) the Federal Arbitration Act requires enforcement of the arbitration clause even if it conflicts with the Carmack Amendment. We reject both arguments.

---

[5]Carmack plainly governs this shipment. "Carmack applies only to transport of property for which Carmack requires a receiving carrier to issue a bill of lading, regardless of whether that carrier erroneously fail[ed] to issue such a bill." *Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 130 S. Ct. 2433, 2444 (2010); *see also* 49 U.S.C. § 14706(a)(1) ("Failure to issue a receipt or bill of lading does not affect the liability of a carrier."). A bill of lading is required if two conditions are met. First, the motor carrier must "provid[e] transportation or service subject to jurisdiction" of the Surface Transportation Board (STB). 49 U.S.C. § 14706(a)(1). Second, that carrier must "receiv[e]" the property "for transportation under this part," where "this part" is the STB's jurisdiction over domestic motor transport. *Id.*; *see also Kawasaki*, 130 S. Ct. at 2443 (describing the same two-step process for rail carriers under 49 U.S.C. § 11706). The STB's jurisdiction extends to carriage that occurs "between a place in the United States and a place in a foreign country." § 13501(1)(E); *see id.* § 10501(a)(2)(F). Here, Smallwood concedes that he contracted with Allied International for interstate shipment, and it is undisputed that Atlas received Smallwood's property in California destined for the UAE. Atlas thus received the property and provided for service subject to the STB's jurisdiction. As a result, Atlas was required to issue a Carmack compliant bill of lading, and the shipment is covered by Carmack.

## A.   The Carmack Amendment

**[3]** The Carmack Amendment governs the terms of interstate shipment by domestic rail and motor carriers. *See Regal-Beloit*, 557 F.3d at 990.[6] Carmack was enacted in 1906 as an amendment to the Interstate Commerce Act. *See id.* It has since been amended repeatedly, but its purpose has always been "to relieve cargo owners 'of the burden of searching out a particular negligent carrier from among the often numerous carriers handling an interstate shipment of goods.' " *Kawasaki*, 130 S. Ct. at 2441 (quoting *Reider v. Thompson*, 339 U.S. 113, 119 (1950)). Part of the relief guaranteed to shippers was "the right of the shipper to sue the carrier in a convenient forum of the shipper's choice." *Aaacon Auto Transp., Inc. v. State Farm Mut. Auto. Ins. Co.*, 537 F.2d 648, 654 (2d Cir. 1976).

When interpreting Carmack:

> Our analysis begins, as it must, with the text of the statute in question. *Azarte v. Ashcroft*, 394 F.3d 1278, 1285 (9th Cir. 2005). Under the "plain meaning" rule, "[w]here the language [of a statute] is plain and admits of no more than one meaning the duty of interpretation does not arise, and the rules which are to aid doubtful meanings need no discussion." *Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863, 878 (9th Cir. 2001) (en banc) (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)).

*Campbell v. Allied Van Lines Inc.*, 410 F.3d 618, 620-21 (9th Cir. 2005) (alteration in original).

---

[6]Smallwood's goods were received by a motor carrier, so we focus on those provisions of Carmack.

**[4]** Carmack's statutory scheme is clearly intended to protect shippers from being forced to submit to foreign arbitration as a condition of contracting with a carrier of household goods. To begin with, Carmack expressly prohibits carriers of household goods from contracting around the statute's requirements. *See* 49 U.S.C. § 14101(b)(1) ("A carrier providing transportation or service subject to jurisdiction under chapter 135 may enter into a contract with a shipper, other than for the movement of household goods described in section 13102(10)(A), to provide specified services under specified rates and conditions."). It is undisputed that AVL is a carrier of household goods and therefore prohibited from contracting around Carmack's conditions.

**[5]** One of these inalienable requirements is that the shipper be permitted to sue in certain venues when a dispute arises. Carmack provides that, when suing the delivering carrier, "[a] civil action . . . may be brought . . . in a district court of the United States . . . in a judicial district . . . through which the defendant carrier operates." 49 U.S.C. § 14706(d)(1). Or, when suing the carrier alleged to have caused the damage, "[a] civil action . . . may be brought . . . in the judicial district in which such loss or damage is alleged to have occurred." *Id.* § 14706(d)(2). These provisions assure the shipper a choice of forums as plaintiff. *See Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 252 (2004) ("'Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.'") (quoting *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985)).[7]

---

[7]The parallel section of Carmack governing rail carriers, § 11706, states that shippers' suits against rail carriers "may *only* be brought" in enumerated venues. 49 U.S.C. § 11706(d)(2)(A) (emphasis added). Interpreting § 11706, we previously held that "forum selection clauses are generally forbidden under Carmack" because the statute "narrowly limits the venues in which a claim against carriers under the Board's jurisdiction may be

The requirement that the shipper not be forced to select a forum at the time of contracting is confirmed by Carmack's own arbitration provision. Section 14708 mandates that motor carriers offer arbitration to shippers of household goods shipped collect-on-delivery. 49 U.S.C. §§ 14708(a), (f). Such arbitration, however, is permissible only when the shipper agrees to arbitrate *after* the dispute arises. *See id.* § 14708(b)(6) ("The carrier must not require the shipper to agree to utilize arbitration prior to the time that a dispute arises."). Moreover, if a shipper elects to arbitrate, an oral presentation of the dispute may be required only if "all parties to the dispute expressly agree to such presentation," *id.* § 14708(b)(7), so the shipper cannot be required to appear in an inconvenient forum even if he chooses arbitration.

**[6]** These provisions operate together to protect the shipper from being forced to arbitrate his claims as a condition to contracting with a household carrier. Thus, under the plain meaning of the statute, *after* a dispute arises the shipper may either accept a carrier's offer to arbitrate or decline arbitration and sue in one of Carmack's enumerated venues. At the time of contracting, however, a carrier of household goods may not force the shipper to relinquish his right to sue in one of those venues.

**[7]** AVL's foreign arbitration clause would allow AVL to compel Smallwood to arbitrate, probably in the UAE. We

---

brought." *Regal-Beloit Corp.*, 557 F.3d at 991. The Supreme Court reversed *Regal-Beloit* on other grounds, *see Kawasaki*, 130 S. Ct. 2433, but indicated in dicta that our holding on forum selection clauses was correct: "[I]t can be assumed that if Carmack's terms apply to the bills of lading here, the cargo owners would have a substantial argument that the Tokyo forum-selection clause in the bills is pre-empted by Carmack's venue provisions," *id.* at 2441-42. AVL argues that § 14706 by contrast does not constrain shippers' choice of venue because it lacks the modifier "only." We are not persuaded. Section 14706 states plainly that shippers may sue particular carriers in particular venues. We need not decide whether the permissive language in § 14706 leads to broader venue options than the "may only" language in § 11706.

have held that "foreign arbitration clauses are but a subset of foreign forum selection clauses in general." *See Fireman's Fund Ins. Co. v. M.V. DSR Atl.*, 131 F.3d 1336, 1339 (9th Cir. 1997) (internal quotation marks omitted). The parties' foreign arbitration clause plainly contravenes Carmack's directive that Smallwood have recourse in the enumerated venues unless he agrees to arbitrate elsewhere after the dispute arises.

AVL raises a final argument based on analogy to the Carriage of Goods by Sea Act (COGSA), 46 U.S.C. § 30701. COGSA is a regulatory regime for ocean carriage akin to the Carmack regime for motor and rail carriage. The Supreme Court has held that COGSA permits foreign forum selection clauses, *see Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 541 (1995), and we have extended that rule to foreign arbitration clauses, *see Fireman's Fund*, 131 F.3d at 1339. *Sky Reefer* and COGSA, however, are inapposite here. Whereas Carmack explicitly guarantees shippers certain venues to seek recourse against their carriers, COGSA only generally prohibits ocean carriers from using contracts "relieving [their] liability for loss or damage to or in connection with the goods, arising from negligence, fault, or failure in the duties and obligations provided in this section, or lessening such liability." COGSA § 3(8), 46 U.S.C. § 30701 note (quoted by *Sky Reefer*, 515 U.S. at 534). *Sky Reefer* interpreted COGSA's prohibition on contracts lessening liability to apply only to the liability explicitly articulated in COGSA and not to extend to procedural issues affecting the shipper's ease of recovery. *See* 515 U.S. at 534-35 (emphasizing the phrase "duties and obligations provided in this section"). Because Carmack expressly prohibits carriers of household goods from contracting around its venue provisions, and because Smallwood does not rely on a general prohibition on lessening carriers' liability, *Sky Reefer* and its interpretation of COGSA § 3(8) are inapposite to our interpretation of Carmack.[8]

---

[8] For the same reason, our holding is not affected by the language in *Sky Reefer* regarding the role of recourse to a domestic forum to challenge for-

**[8]** For the foregoing reasons we agree with the district court's interpretation of § 14706. Foreign arbitration clauses, except as provided in § 14708, are unenforceable under Carmack because they necessarily involve limiting shippers' choice of venues enumerated in the statute.

## B.    Federal Arbitration Law

**[9]** AVL argues that our interpretation of Carmack conflicts with federal arbitration law. We have previously explained:

> Federal arbitration law is codified in the three chapters of Title 9 of the United States Code. The Federal Arbitration Act ("FAA"), enacted in 1947, comprises the first chapter. *See* 9 U.S.C. §§ 1-14. The "Convention on the Recognition and Enforcement of Foreign Arbitral Awards," implementing the treaty of the same name, was enacted in 1970. This statute,

eign arbitration awards that are "repugnant to the public policy of the United States." *Sky Reefer*, 515 U.S. at 540. Whereas COGSA creates no right for shippers to choose their venue, Carmack does; thus Carmack requires more than that shippers can simply avail themselves of domestic jurisdiction to challenge foreign arbitration awards.

*Sky Reefer* does, however, arguably undermine two cases relied on by the district court. *See Aluminum Prods. Distribs., Inc. v. Aaacon Auto Transp., Inc.*, 549 F.2d 1381, 1385 (10th Cir. 1977); *Aaacon Auto Transp., Inc. v. State Farm Mut. Auto. Ins. Co.*, 537 F.2d 648, 653 (2d Cir. 1976). The Aaacon cases reasoned that Carmack prohibits forum selection clauses because such clauses are a form of "lessening" carriers' liability, which Carmack generally prohibits. That reasoning is similar to the interpretation of COGSA's prohibition on lessening carriers' liability that *Sky Reefer* rejected. *See* 515 U.S. at 534 (abrogating *Indussa Corp. v. S.S. Ranborg*, 377 F.2d 200 (2d Cir. 1967) (en banc)). We need not determine the continuing validity of the *Aaacon* cases because they considered an older version of Carmack and did not confront the current language in § 14706 that we rely on. *See Aaacon*, 537 F.2d 648, 653 (citing Interstate Commerce Act § 20(11) (formerly codified at 49 U.S.C. § 319 (1906))).

commonly called the Convention Act, comprises the second chapter. *See* 9 U.S.C. §§ 201-208. The third chapter, implementing the Inter American Convention on International Commercial Arbitration, is not relevant to this case. *See* 9 U.S.C. §§ 301-307.

*Rogers v. Royal Caribbean Cruise Line*, 547 F.3d 1148, 1152-53 (9th Cir. 2008). AVL cites both the FAA and the Convention Act. The Convention Act was "intended to encourage the recognition and enforcement of commercial arbitration agreements in international contracts." *Sky Reefer*, 515 U.S. at 538 (internal quotation marks omitted). Indeed, "[i]t is well-settled that 'questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.' " *Balen v. Holland Am. Line Inc.*, 583 F.3d 647, 652 (9th Cir. 2009) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). That preference, however, applies only if "there is no independent basis in law or equity for revocation." *Sky Reefer*, 515 U.S. at 538-39 (citing *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265 (1995)). "Like any statutory directive, the Arbitration Act's mandate may be overridden by a contrary congressional command." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987). "The burden is on the party opposing arbitration, however, to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." *Id.* at 227.

**[10]** When Congress intends to create an exception to the FAA, "such an intent 'will be deducible from [the statute's] text or legislative history,' or from an inherent conflict between arbitration and the statute's underlying purposes." *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)) (alteration in original and citations omitted). As we have explained, the plain text of Carmack prohibits household carriers from forcing a shipper to agree to arbitrate his claims as a condition to contracting. Thus, there is "a contrary congressional command"

that overrides the FAA's mandate to enforce arbitration agreements.

AVL argues that the FAA's mandate in favor of arbitration implicitly repealed Carmack because the FAA was more recently enacted. *See In re Glacier Bay*, 944 F.2d 577, 581 (9th Cir. 1991) ("[W]here provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one.") (emphasis omitted) (quoting *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 154 (1976)). We reject AVL's argument because the relevant provisions of Carmack were enacted after the FAA and the Convention Act.

The Federal Arbitration Act was codified in 1925, *see* 43 Stat. 883, and enacted in 1947, *see* 61 Stat. 669. The Convention Act was enacted in 1970. *See* 84 Stat. 692. Since 1970, the Carmack Amendment has been reenacted twice and materially amended. Carmack was first enacted as 49 U.S.C. § 20(11) in 1906, then reenacted as 49 U.S.C. § 11707 in 1978,[9] amended by the Staggers Rail Act of 1980[10] and finally reenacted and recodified as sections 11706 and 14706 in 1995.[11] Although Carmack as a whole is older than the FAA, the relevant language in Carmack was enacted more recently than the FAA. Thus, we infer that Congress intended Carmack to be a minor exception to the FAA. *Cf. United States v. Novak*, 476 F.3d 1041, 1052 n.10 (9th Cir. 2007) (noting in dicta that there is "no repeal-by-implication problem when a later statute simply addresses one particular application [of the former statute] and carves out an exception" (alteration in original and internal quotation marks omitted)).

---

[9]An Act to revise, codify, and enact without substantive change the Interstate Commerce Act, Pub. L. No. 95-473, 92 Stat. 1337 (1978).

[10]Staggers Rail Act of 1980, Pub. L. No. 96-448, § 211(c), 94 Stat. 1895 (1980) (creating the distinction between venue options for rail and motor shippers).

[11]ICC Termination Act of 1995, Pub. L. No. 104-88, 109 Stat. 803 (1995) (effective Jan. 1, 1996).

**Conclusion**

**[11]** The parties' arbitration clause is unenforceable under 49 U.S.C. § 14706 because it contravenes a shipper's right to select his forum after the dispute arises, and thus violates the plain language of the Carmack Amendment.

AFFIRMED.